UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**STEVEN D. YELVINGTON,**

    **Plaintiffs,**

    v.                                         CASE No. 3:07-cv-110-J-16MCR

**FLAGLER COUNTY SHERIFF'S OFFICE,**
**a State Agency; DONALD FLEMING, Sheriff**
**of Flagler County, in his official capacity;**
**JAMES MANFRE, in his individual capacity;**
**and, DAVID O'BRIEN, in his individual**
**and official capacity.**

    **Defendant.**
_____/

**O R D E R**

This matter is before the Court on Defendants' Motion to Dismiss (Dkt. 10) and Plaintiff's Response in Opposition (Dkt. 17) (the "Response"). For the reasons that follow the Motion to Dismiss (Dkt. 10) is **GRANTED IN PART** and **DENIED IN PART** without prejudice.

    **I.**    **Procedural and Factual Background**

**Procedural Background**

On February 9, 2007, in state court in the Seventh Judicial Circuit, in and for Flagler County, Plaintiff simultaneously filed a ten-count Complaint, Petition for Writ of Mandamus or, in the Alternative, Mandatory Emergency Injunction (the "Complaint") (Dkt. 2) and his Motion for Emergency Mandatory Injunction or, in the Alternative, Writ of Mandamus and Incorporated Memorandum of Law (the "Motion") to stop the expiration of his Florida Department of Law Enforcement Certificate of Eligibility which would expire on February 18, 2007. Based on the Complaint and Motion a hearing was set in state court for February 16, 2007. On February, 15, 2007, Defendants filed a Notice of Removal (Dkt. 1) removing the

case to the Orlando Division of this Court.

As a result of the removal, the Honorable Anne Conway entered an order (Dkt. 5) on February 15, 2007, remanding all but Counts VI (42 U.S.C. § 1983 Denial of Procedural and Substantive Due Process) and VII (42 U.S.C. § 1983 Denial of Liberty) back to state court.[1] Based on that order, the only Defendants remaining in this case are the Flagler County Sheriff's Office (the "FCSO") and Mr. Donald Fleming ('Sheriff Fleming"), the current Sheriff of Flagler County (collectively, the "Defendants").  Thus, Mr. James Manfre, the acting Sheriff of Flagler County from 2002 through 2004 and Major David O'Brien, head of operations at the FCSO are no longer parties to the federal case.  Also, in her order, Judge Conway transferred the case to Jacksonville for final disposition noting that under the Local Rules the case should have been removed to Jacksonville originally.

Following Judge Conway's order, Defendants changed Plaintiff's last date of employment to May 28, 2003, and sent over verification of the change to Plaintiff's counsel.  As a result of the date change, the emergency was vitiated and the state court hearing was cancelled. On March 15, 2007, Defendants filed their Motion to Dismiss asking the Court to dismiss the two counts remaining before the Court.

---

[1]

§ 1983, Civil action for deprivation of rights, reads that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**Factual Background**

Plaintiff, Mr. Steven Yelvington ("Mr. Yelvington" or "Plaintiff") began working for the FCSO on April 23, 1997. (Dkt. 2, ¶ 10). From 1997 until 2001, Plaintiff received various awards, including the "Deputy of the Year" award in both 1999 and 2001. Sometime in 2001, Plaintiff was promoted to detective within the criminal investigations division of the FCSO. According to Plaintiff, from 1997 through January 2002, he maintained a collegial and professional relationship with Mr. Manfre. However, Plaintiff claims that after January 2002, his relationship with Mr. Manfre quickly deteriorated when Plaintiff instituted two Unfair Labor Act complaints (the "Complaints"), pursuant to Fla. Stat. § 447.501, against both Mr. Manfre and former Chief Deputy of the FCSO, Mr. Mark Marnoski. According to Plaintiff, once he filed the Complaints, he suffered a series of adverse incidents that damaged his professional career. (Dkt. 2, ¶ 15).

The first incident was Plaintiff's "demotion" without explanation from undercover detective in the Criminal Investigation Division to a "detective in uniform" in the Patrol Division. The second incident was Plaintiff's suspension for violating of a direct order following an incident he considered a "jest." Specifically, Plaintiff claims that he was suspended after he placed, with approval from an FCSO Major, a "warning ticket" on Mr. Manfre's patrol car, which was double parked.

On or about June 4, 2002, Plaintiff, the Coastal Florida Benevolent Association (the "CFPBA") and FCSO entered into a settlement agreement under which Plaintiff agreed to drop his Complaints and the FCSO agreed to reduce the disciplinary action from a suspension to a "verbal counseling." In addition, Plaintiff and the FCSO agreed that Plaintiff would transfer from the Patrol Division to the Narcotics Division as an undercover narcotics investigator.

Plaintiff claims that despite the settlement agreement, his employment situation continued to

deteriorate and he was reprimanded for violating direct orders three additional times, once in September 2002 and twice in February 2003 (the "Violations"). In September 2002, Plaintiff was reprimanded for "gossiping" about Major David O'Brien. In February 2003, Plaintiff was reprimanded first for violating a direct order when attempting to resolve a dispute while on duty and then again during a narcotics investigation.

The FCSO instituted an investigation into these Violations. Plaintiff's truthfulness during the investigative interviews was called into question by the investigating officer and he recommended Plaintiff's termination, which Mr. Manfre approved. Upon Plaintiff's termination, the investigation information was forwarded to the Florida Department of Law Enforcement (the "FDLE").

On October 8, 2003, Mr. Yelvington, FCSO and Mr. Manfre entered into another Settlement Agreement (the "Agreement") in which the FCSO agreed to withdraw Mr. Yelvington's termination and find that there was no "cause" for the termination or for the underlying investigations that resulted in Mr, Yelvington's termination. In addition the FCSO agreed to remove all paperwork reflecting the termination from Mr. Yelvington's personnel file and further agreed to keep the agreement confidential and not to place a copy of the Agreement in Mr. Yelvington's personnel file. In exchange, Mr. Yelvington agreed to deliver a letter of resignation to the FCSO, which he did. Mr. Yelvington claims that the FCSO failed to uphold its part of the Agreement and did in fact place several copies of the Agreement into Mr. Yelvington's file.

On September 1, 2004, the FDLE began its own independent investigation into the allegations that Mr. Yelvington perjured himself during FCSO investigation of the Violations. In addition to the FDLE investigation, Mr. Yelvington requested that the CFPBA conduct its own independent investigation of the FCSO's investigations and Mr. Yelvington's termination. On January 24, 2005, the CFPBA forwarded its findings to Sheriff Fleming finding that the internal affairs investigations were, in essence, "carefully

controlled and orchestrated corrupt manipulation of powers to find predetermined conclusions," and requested the FCSO to conduct a new investigation, which Sheriff Fleming arranged.

On March 7, 2005, at the direction of Sheriff Fleming, Major John M. Plummer reviewed the internal affairs investigations and determined that neither of the investigations were conducted according to the "Law Enforcement Officers Bill of Rights," Fla. Stat. § 112.532, and further determined that there was insufficient evidence to find that Mr. Yelvington disobeyed direct orders. On March 23, 2005, Major Plummer forwarded his memorandum memorializing his findings to Sheriff Fleming, who, in turn, acknowledged the findings and sent a letter reflecting this to the FDLE, which concurred with the determination and withdrew its own investigation into Mr. Yelvington's alleged perjury. Mr. Yelvington claims that despite the investigations ultimately absolving him, the terms of the Agreement remain unexecuted and in Mr. Yelvington's personnel file, where confidentiality is not maintained. As a result, Mr. Yelvington claims that he cannot procure gainful employment as a law enforcement officer in the State of Florida.

## II.    Standard of Review

For Defendants to prevail on their Motion under Rule 12(b)(6), Federal Rules of Civil Procedure, they must show beyond all doubt that Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Hishon v. King & Spaulding, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); Luckey v. Harris, 860 F.2d 1012, 1016 (11th Cir. 1988).

In general, courts disfavor motions to dismiss and only grant such motions in rare circumstances. See Gasper v. La. Stadium and Exposition Dist., 577 F.2d 897, 900 (5th Cir. 1978). Therefore, at the motion to dismiss stage, this Court is required to accept all of Plaintiff's well-pleaded facts as true, and all

reasonable inferences are to be construed in the light most favorable to Plaintiff. See e.g., Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274, n.1 (11th Cir. 1999); Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). Further, a motion to dismiss a complaint must be decided on questions of law and questions of law only. Kest v. Nathanson, 216 So.2d 233, 235 (Fla. 4th Dist. Ct. App. 1968).

### III.   Discussion

**The FCSO**

Remaining before the Court are Counts VI and VII, which were brought pursuant to 42 U.S.C. § 1983. Plaintiff sued the FCSO and Sheriff Fleming for termination in violation of his constitutional rights. In the Response, Plaintiff acknowledged that filing suit against the FSCO was inappropriate because in this district "it is redundant and unnecessary to name both the sheriff's office and the sheriff, in his official capacity, in a complaint. (Dkt. 17, at p. 4 citing to Erickson v. Hunter, 1996 WL 427769 (M.D. Fla. April 10, 1996). Defendants are correct that as to the FCSO, Counts VI and VII fail to state claims for which relief can be granted. Thus, the Court dismisses the FCSO from this case because it is not a proper party.[2]

**Sheriff Fleming**

Count VI of the Complaint purports to state a cause of action for the denial of procedural and substantive due process in violation of 42 U.S.C. § 1983. 42 U.S.C. § 1983. Count VII purports to state a cause of action for denial of liberty also in violation of 42 U.S.C. § 1983.

Defendant claims that Counts VI and VII fail to state claims upon which relief may be granted as to Sheriff Fleming, because Sheriff Fleming is entitled to qualified immunity. (Dkt. 10, p. 2).

Plaintiff responds that Defendant's qualified immunity arguments "addressed in pages 3 through

---

[2] Because Sheriff Fleming is the sole Defendant remaining in the case, the Court will now refer to Defendant in the singular.

9 of their Motion to Dismiss are rendered moot since [sic] qualified immunity for an individual's action is not an issue where the suit was not instituted against Donald Fleming individually." (Dkt. 17, at p. 4). Plaintiff further claims that "[o]ne need go no further than the face of the Complaint to discern that the Sheriff of Flagler County was sued in his *official capacity* as required under the law of the State of Florida and this Circuit." (Dkt. 17, p. 4).

Plaintiff is correct. Qualified immunity is available to individuals, not governmental entities. In this case, it is clear that Sheriff Fleming was sued in his official capacity only and not in his individual capacity. Suing Sheriff Fleming in his official capacity is the equivalent of suing a governmental entity. Brandon v. Holt, 469 U.S. 464, 471-72 (1985) ("[W]e have plainly implied that a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and opportunity to respond.") Consequently, this defense is "not available to Defendants in their official capacity; it is only available to them in their personal capacity." Rodriguez v. Municipality of Barceloneta, 236 F. Supp. 2d 189, 194 (2002). Thus, at this point in the litigation, the Court **DENIES** Defendant's claims for qualified immunity for Sheriff Fleming.

Under the umbrella of qualified immunity, Defendant makes several additional arguments for dismissal of the Complaint. Specifically, Defendant claims that dismissal of Count VI is warranted because no constitutional violation occurred and Mr. Yelvington cannot plead a cause of action for violation of his substantive due process rights. Defendant further claims that dismissal of Count VII is warranted because Plaintiff cannot establish that a deprivation of his liberty interest occurred without due process of law under the test enumerated in cases such as Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001). Because these arguments were made in support of a claim for qualified immunity for Sheriff Fleming, and because that request was denied by the Court, it is necessary that the following occur in order

for the Court to fully evaluate and address the issues raised in this case:

1. Plaintiff is directed to file an Amended Complaint within ten (10) days from the date of this Order setting forth the causes of action remaining in this case against the sole remaining Defendant, Sheriff Fleming, in his official capacity;

2. Within twenty (20) days from the date of this Order, if necessary, Defendant may file a Motion to Dismiss setting forth any arguments for dismissal of the Amended Complaint; and,

3. Plaintiff is directed to file his response to the Motion to Dismiss within ten (10) days of the date of its filing.

**IV. Conclusion**

For the reasons set forth above, tthe Motion to Dismiss (Dkt. 10) is **GRANTED IN PART** and **DENIED IN PART**. The FCSO is dismissed from the case. The parties are directed to make the filings ordered by the Court within the time frame set forth above.

**DONE AND ORDERED** in Chambers at Jacksonville, Florida on this 24th day of April 2007.

_____
JOHN H. MOORE II
United States District Judge

Copies to: Counsel of Record