UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**STEVEN D. YELVINGTON,**

    **Plaintiffs,**

    **v.**                                    **CASE No.: 3:07-cv-110-J-16MCR**

**DONALD FLEMING, Sheriff
of Flagler County, in his official capacity**,

    **Defendant.**
_____/

**O R D E R**

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 23) (the "Motion to Dismiss") and Plaintiff's Response in Opposition (Dkt. 27 ) (the "Response"). For the reasons that follow the Motion to Dismiss (Dkt. 23) is **GRANTED**.

**I.**    **Procedural and Factual Background**

**Procedural Background**

The complete procedural background for this case was set forth in the Court's Order dated April 24, 2007 (Dkt. 21). By way of summary, this case was originally filed in state court. Defendant removed it to the Orlando Division of the Middle District of Florida. In an Order dated, February 15, 2007, Judge Anne Conway dismissed Mr. James Manfre and Mr. David O'Brien from the case, remanded all but two counts from the original complaint back to state court and transferred the case from the Orlando Division to the Jacksonville Division. (Dkt. 5). As a result of Judge Conway's Order only Counts VI (42 U.S.C. § 1983 Denial of Procedural and Substantive Due Process) and VII (42 U.S.C. § 1983 Denial of Liberty) are pending before the Court. On March 15, 2007, Defendants filed a Motion to Dismiss (Dkt. 10) asking the Court to dismiss the two remaining counts based on qualified immunity.

On April 24, 2007, the Court entered an Order (the "April 24 Order") dismissing the Flagler County Sheriff's Office (the "FCSO") from the case and denying qualified immunity to the now sole Defendant, Sheriff Donald Fleming. (Dkt. 21). The April 24 Order allowed Plaintiff to file an Amended Complaint and Defendant to file a second Motion to Dismiss. (Dkt. 21 at p. 8). On May 4, 2007, Plaintiff filed his two-count Amended Complaint (Dkt. 22) and shortly thereafter, Defendant filed his Motion to Dismiss (Dkt. 23), to which Plaintiff filed a Response in Opposition (Dkt. 27) (the "Response").

**Factual Background**

Plaintiff, Mr. Steven Yelvington ("Mr. Yelvington" or "Plaintiff") began working for the FCSO on April 23, 1997. (Dkt. 2, ¶ 10). According to Plaintiff, from 1997 until 2001, he received various awards, including the "Deputy of the Year" award in both 1999 and 2001. Sometime in 2001, Plaintiff was promoted to detective within the criminal investigations division of the FCSO. Plaintiff claims that from 1997 through January 2002, he maintained a collegial and professional relationship with Mr. Manfre. However, Plaintiff further claims that after January 2002, his relationship with Mr. Manfre quickly deteriorated when Plaintiff instituted two Unfair Labor Act complaints (the "Complaints") pursuant to Fla. Stat. § 447.501, against both Mr. Manfre and former Chief Deputy of the FCSO, Mr. Mark Marnoski. According to Plaintiff, once he filed the Complaints, he suffered a series of adverse incidents that damaged his professional career. (Dkt. 2, ¶ 15).

The first incident was Plaintiff's "demotion," allegedly without explanation, from undercover detective in the Criminal Investigation Division to a "detective in uniform" in the Patrol Division. The second incident was Plaintiff's suspension for violating a direct order following an incident he considered a "jest." Specifically, Plaintiff claims that he was suspended after he placed, with approval from an FCSO Major, a "warning ticket" on Mr. Manfre's double parked patrol car.

On or about June 4, 2002, Plaintiff, the Coastal Florida Benevolent Association (the "CFPBA") and FCSO entered into a settlement agreement (the "Settlement Agreement") under which Plaintiff agreed to drop his Complaints and the FCSO agreed to reduce the disciplinary action from a suspension to a "verbal counseling." In addition, Plaintiff and the FCSO agreed that Plaintiff would transfer from the Patrol Division to the Narcotics Division as an undercover narcotics investigator.

Plaintiff claims that despite the Settlement Agreement, his employment situation continued to deteriorate and he was reprimanded for violating direct orders three additional times, once in September 2002 and twice in February 2003 (the "Violations"). In September 2002, Plaintiff was reprimanded for "gossiping" about Major David O'Brien. In February 2003, Plaintiff was reprimanded for violating a direct order first when attempting to resolve a dispute while on duty and then again during a narcotics investigation.

The FCSO instituted an investigation into these Violations. Plaintiff's truthfulness during the investigative interviews was called into question by the investigating officer and he recommended Plaintiff's termination, which Mr. Manfre approved. Upon Plaintiff's termination, the investigation information was forwarded to the Florida Department of Law Enforcement (the "FDLE").

On October 8, 2003, Mr. Yelvington, FCSO and Mr. Manfre entered into another settlement agreement (the "Second Settlement Agreement") in which the FCSO agreed to withdraw Mr. Yelvington's termination and find that there was no "cause" for the termination or for the underlying investigations that resulted in Mr. Yelvington's termination. In addition the FCSO agreed to remove all paperwork reflecting the termination from Mr. Yelvington's personnel file and further agreed to keep the agreement confidential and not to place a copy of the Second Settlement Agreement in Mr. Yelvington's personnel file. In exchange, Mr. Yelvington agreed to deliver a letter of resignation to the FCSO, which he did. Mr.

Yelvington claims that the FCSO failed to uphold any of its part of the Second Settlement Agreement and did in fact place several copies of it in Mr. Yelvington's file.

On September 1, 2004, the FDLE began its own independent investigation into the allegations that Mr. Yelvington perjured himself during FCSO investigation of the Violations. In addition to the FDLE investigation, Mr. Yelvington requested that the CFPBA conduct its own independent investigation of the FCSO's investigations and Mr. Yelvington's termination. On January 24, 2005, the CFPBA forwarded its findings to Sheriff Fleming finding that the internal affairs investigations were, in essence, "carefully controlled and orchestrated corrupt manipulation of powers to find predetermined conclusions," and requested the FCSO to conduct a new investigation, which Sheriff Fleming arranged.

On March 7, 2005, at the direction of Sheriff Fleming, Major John M. Plummer reviewed the internal affairs investigations and determined that neither of the investigations were conducted according to the "Law Enforcement Officers Bill of Rights," Fla. Stat. § 112.532, and further determined that there was insufficient evidence to find that Mr. Yelvington disobeyed direct orders. On March 23, 2005, Major Plummer forwarded his memorandum memorializing his findings to Sheriff Fleming, who, in turn, acknowledged the findings and sent a letter reflecting this to the FDLE, which concurred with the determination and withdrew its own investigation into Mr. Yelvington's alleged perjury.

Mr. Yelvington claims that despite these investigations ultimately absolving him, the terms of the Second Settlement Agreement remain unexecuted and in Mr. Yelvington's personnel file, where confidentiality is not maintained. As a result, Mr. Yelvington claims that he cannot procure gainful employment as a law enforcement officer in the State of Florida.

**II.     Standard of Review**

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the

light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. Jackson v. Okaloosa County, Fla., 21 F.3d 1532, 1534 (11 th Cir. 1994). Furthermore the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed. R.Civ. P., 10(c); GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11 th Cir. 1993). A complaint must be dismissed pursuant to Fed.R.Civ.P 12 (b)(6) for failure to state a claim upon which relief can be granted of it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. Harrison v. Office of the State Courts Administrator, 2007 WL 1576351 (May 20, 2007, M.D. Fla.) (citing to Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007).

In general, courts disfavor motions to dismiss and only grant such motions in rare circumstances. See Gasper v. La. Stadium and Exposition Dist., 577 F.2d 897, 900 (5th Cir. 1978). Further, a motion to dismiss a complaint must be decided on questions of law and questions of law only. Kest v. Nathanson, 216 So.2d 233, 235 (Fla. 4th Dist. Ct. App. 1968).

**III.   Discussion**

Counts I and II of the Amended Complaint were brought pursuant to 42 U.S.C. § 1983. Count I of the Complaint purports to state a cause of action for the denial of procedural and substantive due process in violation of 42 U.S.C. § 1983. 42 U.S.C. § 1983. Count II purports to state a cause of action for denial of liberty also in violation of 42 U.S.C. § 1983.

Defendant claims that Counts I and II fail to state claims upon which relief may be granted. Specifically, Defendant claims that dismissal of Count I is warranted because Mr. Yelvington can plead

no facts that demonstrate he has a fundamental right to his employment.  Further, according to Defendant, Mr. Yelvington's procedural due process claims must fail because he was given notice and an opportunity to be heard prior to his alleged termination, and ultimately resigned from Defendant's agency according to the voluntary Second Settlement Agreement.

Defendant further claims that dismissal of Count II is warranted because Plaintiff cannot establish that a deprivation of his liberty interest occurred without due process of law under the test enumerated in cases such as Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001) (citing Buxton v. City of Plant City, 871 F.2d 1037, 1042-43 (11 th Cir. 1989).

**Count I - Substantive and Procedural Due Process Claims**

Section 1983, reads, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 is not "itself a source of substantive rights" rather, it provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989).  To succeed with a § 1983 claim, a plaintiff must show a violation of a right secured by federal law.

Under § 1983, the Supreme Court has recognized both procedural due process and substantive due process violations; it has also emphasized that distinguishing one type of violation from the other is important. Zinerman v. Burch, 494 U.S. 113, 124-26 (1990).  The substantive component of the Due Process Clause protects those rights that are "fundamental" or "implicit in the concept of ordered liberty." McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994).  If the challenged conduct has an impact on

substantive due process concern, the cause of the action under § 1983 is complete when the wrongful action is taken. Zinerman, 490 U.S. at 125.

Procedural due process guarantees fair procedure. In procedural due process cases, the deprivation of a constitutionally protected interest in "life, liberty, or property" is not what is unconstitutional; instead, it is the deprivation of the interest without due process of law. Id. Thus, a state can cure a procedural deprivation by providing a later procedural remedy. Accordingly, a § 1983 action for a procedural due process violation will only occur if the state refuses to provide a process sufficient to remedy the challenged constitutional conduct. McKinney, 20 F.3d at 1557.

**Substantive Due Process**

The Supreme Court has extended substantive due process protection to only a selected few enumerated rights, which are defined or limited by the Constitution. Rights created by state law, specifically tort law, public employment law or property law are not the subjects of substantive due process protection and may be rescinded so long as the elements of procedural due process are observed. Id. at 1556. See also Hunt v. City of Mulberry, 173 F. Supp. 2d 1288, 1293-94 (M.D. Fla. 2001) (citing to Hinson v. Clinch County Georgia Bd. of Educ., 231 F.3d 821, 832 (11th Cir. 2000), and noting that in McKinney the Eleventh Circuit overruled any prior decisions that granted pre-textually terminated employees a Section 1983 cause of action).

Thus, because employment is not afforded substantive due process protection, Mr. Yelvington has not suffered any denial of his substantive due process rights and his substantive due process claim is **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted. See Capsalis v. Worch, 902 F.Supp. 227, 230 (1995)(citing to McKinney, 20 F.3d at 1556; see also Elkins v. Gallagher, 1997 WL 441274 *4 (May 30, 1997, M.D. Fla). In the Response Mr. Yelvington attempts to characterize

his substantive due process claim as one based on "free speech." This characterization is disingenuous as the plain language of the Amended Complaint is silent as to free speech.

**Procedural Due Process**

Mr. Yelvington claims that the FCSO violated his right to procedural due process when it failed to notify Mr. Yelvington of his "Officer's Rights" under the Law Enforcement Officer's Bill of Rights, Fla. Stat. § 112.532 and also failed to notify Mr. Yelvington of the disciplinary action prior to the effective date of such action.

Defendant claims that Mr. Yelvington has pled no facts that suggest he was denied procedural due process and, in fact, the facts reveal that Plaintiff was provided with a notice and opportunity to be heard and prior to what would have been his termination and then voluntarily chose to tender his resignation pursuant to the Second Settlement Agreement.

In an employment context, a plaintiff can establish entitlement to procedural due process under the United States [and Florida] Constitution by showing a property interest in his or her position. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). The concept of a property interest has been defined by the Supreme Court as a legitimate expectation of continued employment. Bishop v. Wood, 426 U.S. 341 (1976). Such legitimate expectations of continued employment are not derived from the United States Constitution. Rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law." Stough v. Gallagher, 967 F.2d 1523 (11th Cir. 1992).

A section 1983 claim alleging denial of procedural due process "requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and, (3) constitutionally-inadequate process." Price v. City of Ormond Beach, Florida, 2006 WL 1382096 *5 (M.D.

Fla. May 19, 2006)(citing to Arrington v. Helms, 483 F. 3d 1336, 1347 (11th Cir. 2002)).

In Florida, a deputy sheriff has no protected property interest in his or her employment because:

> [D]eputy sheriffs in Florida are not deemed to be employees of the sheriff, but rather, are appointees who serve at the pleasure of the sheriff. Because deputy sheriffs are not employees and both their selection and retention come under the absolute control of the sheriff, they have no property interest in their positions for purposes of the Fourteenth Amendment of the United States Constitution.

McRae v.Douglas, 644 So.2d 1368, 1373 (Fla. 5th Dist. Ct. App. 1994).

Mr. Yelvington cannot therefore establish the necessary property interest in his position. As will be seen below, he also has not suffered any deprivation of a liberty interest.

The second element requires proof of state action. Here, Mr. Yelvington resigned voluntarily, he was not terminated by the FCSO. Thus, there does not appear to be any requisite state action in this case. See Venero v. City of Tampa, 830 F.Supp. 1457, 1460 (M.D. Fla. 1993) (dismissing due process claim because "there must be state action to sustain a claim of deprivation of due process under the Fourteenth Amendment.").

The third and final element requires proof that the procedures in place are constitutionally inadequate. Even assuming that Mr. Yelvington could prove the first two elements, he has not questioned the adequacy of the procedures mandated by the Law Enforcement Officer's Bill of Rights; rather, he claims that the requisite procedures were not followed. In Canon v. Clark, 883 F. Supp. 718, 722 (S.D. Fla. 1995), the court dismissed a procedural due process claim because the plaintiff failed to allege that the procedures in place were inadequate, but instead merely claimed that defendant did not follow them. Mr. Yelvington, however, does not offer the Court any actual evidence of what the procedures were in his case or provide details as to exactly which were not followed.

It is clear that multiple investigations, discussions and settlement agreements were conducted, held

or entered into in this case. The very fact that Mr. Yelvington's truthfulness regarding the violations was questioned indicates that Mr. Yelvington participated in the investigations associated with his resignation.

Based on the above, the Court finds that Mr. Yelvington's procedural due process claim fails to state a claim upon which relief can be granted, thus this claim is **DISMISSED** with prejudice.

**Count II - Liberty Interest**

Mr. Yelvington bases his denial of liberty claim on allegations that he cannot pursue the vocation of his choice due to acts and omissions by the FCSO, including but not limited to, the failure of the Sheriff's office to keep the Second Settlement Agreement confidential and FCSO's failure to remove termination references from Mr. Yelvington's file.

Defendant claims that Mr. Yelvington's liberty interest claim must be dismissed because Mr. Yelvington: 1) failed to allege that the documents pertaining to his separation from the "agency and the investigations regarding the [Violations] were in fact false;" 2) resigned voluntarily and was not, in fact, terminated; 3) and, failed to plead that he was denied a meaningful opportunity for an employee name clearing hearing. (Dkt. 23 at p.2).

A constitutionally recognized liberty interest is implicated and the right to procedural due process is required when government action threatens an employee's good name, reputation, honor or integrity. Roth, 408 U.S. 564 (1977). In the Eleventh Circuit it is clear that in order for there to be a liberty interest, the government must threaten serious damage to one's standing and association in the community or foreclose one's freedom to take advantage of other employment opportunities. Clemons v. Dougherty County, 684 F.2d 1365, 1373 (11th Cir. 1982).

In order to recover for alleged "reputational" damage, a plaintiff must satisfy a six-factor test and show that: (1) a false statement, (2) of a stigmatizing nature; (3) attending a governmental employee's

discharge, (4) was made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name clearing hearing. Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000).

It is clear from the pleadings that there has been publication. The Eleventh Circuit has made clear that "placing information in a public employee's personnel file, at least where it is open to public inspection as such files are in Florida, is publication." Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001) (citing Buxton v. City of Plant City, 871 F.2d 1037, 1045-46 (11th Cir. 1989)). It is also presumed that Mr. Yelvington's reputation has been damaged by the publication of material assuming Mr. Yelvington's allegations that he failed to secure a position as a law enforcement officer despite actively seeking such employment are true. However, it does not appear that Mr. Yelvington's reputation was besmirched "attending his discharge," that the statements in his file were false or that he was denied a meaningful opportunity for an employee name clearing hearing.

In his Amended Complaint, Mr. Yelvington informs the Court that the FCSO's refusal to comply with the terms of the Second Settlement Agreement have precluded him from working in the vocation of his choice. (Dkt. 27 at p. 4). Nowhere in his Amended Complaint does Mr. Yelvington dispute the validity of the Second Settlement Agreement or claim that his resignation, as witnessed by the resignation letter attached to the Amended Complaint, was anything less than voluntary. At one point in the Amended Complaint, Mr. Yelvington claims that he was terminated or "effectively terminated" (Dkt. 22 at p. 10, ¶ 60); however, in ¶¶ 23 and 25 of the Amended Complaint Mr. Yelvington informs the Court that the FCSO agreed to withdraw its termination and that, in accordance with the Second Settlement Agreement, he delivered his resignation letter. Based on these facts, the Court can only conclude that Mr. Yelvington's resignation was voluntary and he was not terminated or effectively terminated.

In addition, Mr. Yelvington does not deny the facts surrounding the first Settlement Agreement or

the Second Settlement Agreement.  Rather, he characterizes the situations that ultimately required him to enter into the settlement agreements differently - for example, he felt that ticketing Mr. Manfre's patrol car was a "jest."

What Mr. Yelvington consistently claims is that the FCSO failed to comply with the Second Settlement Agreement. (Dkt. 27 at p. 2, ¶ 4). As part of the Second Settlement Agreement, Mr. Yelvington resigned. If Mr. Yelvington wants to enforce the terms of the Second Settlement Agreement, which he appears to desire, then he must acknowledge that his resignation has a fatal impact on his liberty interest claim as it precludes his reputation being damaged "attending discharge."

If this alone were not enough for dismissal, Mr. Yelvington failed to establish that he was not provided a meaningful opportunity for a name clearing hearing. It appears to the Court that by entering into the Second Settlement Agreement, Mr. Yelvington "knowingly and intelligently chose to waive his right to a hearing in order to improve the possibility of obtaining other employment" in law enforcement. See Tanner v. McCall, 441 F.Supp. 503, 508 (M.D. Fla. 1977) (citing to Stewart v. Bailey, 556 F.2d 281 (5th Cir. 1977), for the proposition that in tendering a resignation a plaintiff waives his right to due process and excuses any further Fourteenth Amendment obligations).

It is clear to this Court that, if anything, the investigations conducted by both the CFPBA, the FCSO and Major John M. Plummer provided more than a meaningful opportunity for name clearing as "such a hearing may be held before or after termination or publication." Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000). As Mr. Yelvington himself acknowledged, Major Plummer's investigation "absolved" (Dkt. 22 at p.6) and "exonerated" (Dkt. 22 at p. 9) him.

Finally, the Court notes that in the recently decided Bailey v. Town of Lady Lake, Florida, 2007 WL 677995 *7 (March 5, 2007, M.D. Fla.), Judge Hodges dismissed a plaintiff's deprivation of his liberty

12

interest in his business reputation in part because plaintiff failed to address any of the six factors enumerated in <u>Cotton v. Jackson</u> or to state remedies that may have been available.  <u>Bailey v. Town of Lady Lake, Florida</u>, 2007 WL 677995 at *7.  Like the plaintiff in <u>Bailey</u>, Mr. Yelvington has failed to adequately address the six factors necessary to plead damage to reputation.

Viewing the Amended Complaint in the light most favorable to Mr. Yelvington, the Court finds that it fails to state a cause of action for which relief can be granted as to deprivation of a liberty interest, thus that Count II is **DISMISSED** with prejudice.

Defendant's Motion (Dkt. 23) is **GRANTED** and this case is **DISMISSED**.

**DONE and ORDERED** from chambers in Jacksonville, Florida on this 3rd day of July, 2007.

_____
JOHN H. MOORE II
United States District Judge

Copies to:    Counsel of Record